UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PEOPLES BANK, et al., <br><br> Plaintiffs, <br> v. <br><br> P/C AMBASSADOR OF THE LAKE, et al., <br><br> Defendants. | CASE NO. C16-1403JLR <br><br> ORDER ON MOTION FOR FEES AND MOTION FOR JUDGMENT |

## I. INTRODUCTION

Before the court are: (1) Plaintiff Peoples Bank's motion for an order approving administrative expenses, directing partial reimbursement of those expenses from Plaintiff-in-Intervention Seattle Mobile Marine LLC ("SMM"), and approving legal fees and costs (Mot. (Dkt. # 109)); and (2) Peoples Bank's motion for a deficiency judgment against *in personam* Defendant Salvatore Ragusa (MDJ (Dkt. # 120)). SMM and Mr.

//

Ragusa oppose portions of each motion.[1] (SMM Mot. Resp. (Dkt. # 115); Ragusa Mot. Resp. (Dkt. # 113); SMM MDJ Resp. (Dkt. # 130); Ragusa MDJ Resp. (Dkt. # 127).) The court has considered the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[2] the court GRANTS in part and DENIES in part the motion for fees and ORDERS that Peoples Bank is entitled to judgment against Mr. Ragusa, *in personam*, for $143,367.52, plus interest at $45.98 per day from November 27, 2017, through the date of entry of this judgment and until paid.

## II. BACKGROUND

This case arises from several debts that Mr. Ragusa owed to various entities; only two loans with Peoples Bank remain in dispute. (*See* MDJ at 1-2; 11/28/17 Loosmore Decl. (Dkt. # 122) ¶¶ 4-6, 8.) Peoples Bank made the first loan, Loan Number 5045130-601 ("the 601 Loan"), to Mr. Ragusa on November 20, 2015, for an original principal amount of $90,000.00. (11/28/17 Olson Decl. (Dkt. # 121) ¶ 3.) The principal amount of the 601 Loan was subsequently increased to $126,500.00 on February 4, 2016. (*Id.*) Peoples Bank made the second loan, Loan Number 5045130-602 ("the 602 Loan"), to Mr. Ragusa on August 10, 2016 for a principal amount of $22,485.90. (*Id.*) As of

---

[1] SMM recently accepted an offer of judgment made by Mr. Ragusa, resolving its *in personam* claims against him arising from his failure to pay for various repairs and improvements made to Mr. Ragusa's vessel. (*See* Not. of Acceptance (Dkt. # 137); SMM Compl. (Dkt. # 39) ¶¶ 30-32.)

[2] Although SMM requests oral argument in regards to Peoples Bank's request for partial reimbursement (*see* SMM Mot. Resp. at 1), the court finds that oral argument would not be helpful to its disposition of that issue, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1 | November 27, 2017, Mr. Ragusa owes $135,388.96 on the 601 Loan and $26,300.68 on

2 | the 602 Loan, owing in total $161,689.64. (*Id.* ¶ 4.) Mr. Ragusa does not dispute any of

3 | the above figures. (*See generally* Ragusa MDJ Resp.; Vaughn Decl. (Dkt. # 129) ¶ 2.)

4 | On September 2, 2016, the court issued a vessel arrest warrant for Mr. Ragusa's

5 | vessel, the Ambassador of the Lake, based on Peoples Bank's foreclosure on the marine

6 | mortgage. (Arrest Order (Dkt. # 8); *see also* Peoples Bank Compl. (Dkt. # 1).) SMM

7 | subsequently intervened in the case based on its verified statement of interest (10/25/16

8 | Order (Dkt. # 40); *see also* SMM Compl.) but dismissed its *in rem* claims against the

9 | vessel on April 24, 2017 (Not. of Dismissal (Dkt. # 90)). The court granted Peoples

10 | Bank's motion for an interlocutory sale and authorized Peoples Bank to submit a credit

11 | bid at that sale. (4/20/17 Order (Dkt. # 89) at 6-7, 10). Peoples Bank then purchased the

12 | Ambassador of the Lake at the court-ordered interlocutory sale on May 24, 2017 for a

13 | credit bid of $149,753.12. (Ret. of Serv. Re: Marshal's Sale (Dkt. # 94) at 1).

14 | Peoples Bank believed that it would be able to sell the vessel for $123,363.35 to a

15 | private buyer but instead realized only $34,100.00 from the sale. (*See* 8/9/17 Order (Dkt.

16 | # 106) at 2-3; 11/28/17 Loosmore Decl. ¶ 3; 11/15/17 Olson Decl. (Dkt. # 110) ¶¶ 4-5.)

17 | Peoples Bank now asks the court to approve various administrative expenses, legal fees

18 | and costs, and to enter a deficiency judgment against Mr. Ragusa, *in personam*. (*See*

19 | *generally* Mot.; MDJ.) However, the parties disagree as to who is responsible for the

20 | administrative expenses and the amount of the deficiency owed. The court first addresses

21 | the motion concerning the administrative expenses and legal fees and then turns to the

22 | motion for a deficiency judgment.

## III. ANALYSIS

**A. Motion for Administrative Expenses and Legal Fees**

Peoples Bank asks the court for an order that: (1) approves administrative expenses of $65,501.56 incurred during this matter; (2) directs SMM to reimburse half of those administrative expenses; and (3) approves $65,929.44 of legal fees to be paid by Mr. Ragusa. The court considers the issues pertaining to the administrative expenses before turning to the legal fees.

    1. Administrative Expenses

        *a. Approval of Administrative Expenses*

Peoples Bank asserts that it has incurred and paid "costs of custody of the substitute custodian of $10,521.51, for storage of the vessel ashore of $49,743.62, and charges of the U.S. Marshal of $5,236.43" for a total of $65,501.56. (Mot. at 3.) As evidence of these costs, Peoples Bank offers the declaration of Amber Olson, the vice president and Special Assets and Credit Risk manager, who has personal knowledge of this suit and is responsible for receiving all statements for expenses and fees paid by Peoples Bank. (11/15/17 Olson Decl. ¶¶ 1-2; *see also* 12/1/17 Olson Decl. (Dkt. # 125) ¶¶ 1-2.) She states that "from the time Peoples Bank filed the lawsuit against Mr. Ragusa and his boat through the date the boat was released from arrest after the U.S. Marshals sale, Peoples Bank paid $65,501.56 for administrative expenses." (12/1/17 Olson Decl. ¶ 3.) She also includes a breakdown of those costs. (*Id.* ¶ 4, Ex. 1.) Neither Mr. Ragusa

//

//

nor SMM offers any evidence to the contrary.[3] (*See* Ragusa Mot. Resp. at 2; SMM Mot. Resp. at 12-13.)

On September 2, 2016, the court appointed Dock Street Custodial, LLC as substitute custodian for the vessel and ordered that all authorized expenses that are incurred by Peoples Bank for "the movement and safekeeping of the defendant vessel and its equipment" shall be deemed administrative expenses. (9/2/16 Order (Dkt. # 9) at 5.) Finding no reason to question the above submissions of these expenses, the court approves $65,501.56 as administrative expenses in this matter.

### b. *Contribution from SMM*

Peoples Bank also requests that SMM contribute to the administrative expenses by reimbursing half of the costs. (Mot. at 3-5.) Peoples Bank argues that because the proceeds from the subsequent private sale of the vessel—$34,100.00—are less than the costs of custody—$65,501.56—SMM, as an intervenor plaintiff, must contribute equally to the administrative expenses. (*Id.* at 4.) SMM disagrees for two reasons. First, SMM relies on the judicial sale price of the vessel—$149,753.12—and thus maintains that the value of the boat exceeded the costs of custody. (SMM Mot. Resp. at 6-8.) Second, SMM purports that even if the costs of custody exceeded the value of the boat, SMM should not be responsible for reimbursement because, a month before the auction, it had

---

[3] SMM asserts that it challenges the reasonableness of Peoples Bank's administrative expenses only "[i]n the event the [c]ourt finds [SMM] is required to contribute to the costs of custody." (SMM Mot. Resp. at 13.) Because the court finds that SMM does not need to reimburse Peoples Bank for these fees, *see infra* § III.A.1.b, the court does not consider SMM's objection to the expenses submitted by Peoples Bank.

ORDER - 5

dismissed its *in rem* claims and accordingly distinguished its interest in the proceeds of the sale. (*Id.* at 8-12.) The court agrees with SMM.

As a threshold matter, the court concludes that the value of the boat exceeds the costs of custody, thus rendering reimbursement inappropriate. Both parties agree that reimbursement is an option when the value of the boat is insufficient to cover the costs of custody. (*See* Mot. at 4; SMM Mot. Resp. at 7); *see Donald D. Forsht Assoc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1557 (11th Cir. 1987) (considering reimbursement "when the funds realized at a court-ordered interlocutory sale of [the vessels] were insufficient to cover court-ordered administrative expenses"). However, the parties disagree on what the value of the boat is: the sale price at the U.S. Marshal's auction or the price Peoples Bank later realized in the subsequent private sale. (*Compare* Mot. at 4, *with* SMM Mot. Resp. 7-8.) Peoples Bank provides no authority for its contention that the value of the boat is measured by its subsequent private sale rather than what the vessel sold for at the public auction.[4] To the contrary, the precedent cited by Peoples Bank utilizes the public auction price as the value of the boat, even when the mortgagee, like Peoples Bank did here, purchased the vessel at the auction and

---

[4] Peoples Bank points repeatedly to the court's parenthetical statement in a previous order that "the resale price less the cost of repairs is presumptively the fair market value of property" and assumes that "resale" refers to the private sale after the auction. (*See* Mot. Reply (Dkt. # 124) at 3-4 (citing 8/9/17 Order at 6).) But the court did not definitively hold that "resale" refers to the subsequent private sale, nor was it presented with the question of which sale price applies. (*See* 8/9/17 Order at 6.) Indeed, the case the court was describing characterizes the judicial auction sale price—and not the subsequent private sale price—as the presumptive value of the vessel. *See Walter E. Heller and Co. v. O/S Sonny V.*, 595 F.2d 968, 972 n.3 (5th Cir. 1979) ("If . . . the defendants fail to carry their burden of proving a fair value in excess of the [auction] sale price the district court should adopt the $35,000 [auction] sale price as the measure of the defendants' offset.").

ORDER - 6

presumably sold it afterwards to a third-party. (*See* Mot. at 4 (citing *Certain Underwriters at Lloyds v. Kenco Marine Terminal*, 81 F.3d 871, 872 (9th Cir. 1996) (utilizing court-ordered interlocutory sale price as value of the boat); *Forsht*, 821 F.2d at 1558 (utilizing auction sale price that the mortgagee paid to obtain the vessel)).) And using the auction sale price, reimbursement is plainly inappropriate here because the value of the vessel—$149,753.12—covers the costs of custody—$65,501.56.

But even if Peoples Bank is correct that the value of the boat is insufficient to cover the administrative expenses, reimbursement from SMM would still be unsuitable. The Local Admiralty Rule authorizing contribution makes clear that it is within the court's discretion to determine whether and to what extent an intervening plaintiff is required to pay. Local Admiralty Rules W.D. Wash. LAR 131(d); *Dedolph v. Pacatlantic Fisheries Inc.*, No. C97-1738RSL, 1999 U.S. Dist. Lexis 22538, at *7 (W.D. Wash. Nov. 17, 1999) ("The Rule gives the Court discretion in deciding how to allocate the costs of custody."). In *Dedolph*, the court declined to require contribution from various intervening parties, either because they were likely to recover nothing from the sale or because they had dismissed their claims before the auction took place. 1999 U.S. Dist. Lexis 22538, at *8-10. The court concluded that it would be unjust to require contribution from those parties. *Id.*

The court finds that requiring SMM to contribute would similarly be unjust. SMM would have gained nothing from the sale of the vessel, given that Peoples Bank had the superior claim. (*See* 4/20/17 Order at 6.) Moreover, SMM dismissed its *in rem* claims

//

ORDER - 7

against the vessel before the auction even took place. (*See* Not. of Dismissal.)[5] Thus, as in *Dedolph*, it would be unfair for SMM to cover half of the custody costs in this matter.

Accordingly, the court declines to direct SMM to reimburse Peoples Bank for half of the costs in custody. First, reimbursement is inappropriate as the value of the vessel covers the administrative expenses. Second, even if the value of the vessel were insufficient, it would be unjust to require SMM to contribute to the costs when it would not recover anything from the sale and had dismissed its claims against the vessel before the sale took place.

2. Legal Fees

Lastly, Peoples Bank asks the court to approve its attorney fees and costs, which are to be paid by Mr. Ragusa per the terms of the various promissory notes and agreements he signed with Peoples Bank. (Mot. at 5-6; *see also* 11/15/17 Loosmore Decl. (Dkt. # 111) ¶¶ 2-4.) Peoples Bank states that it has incurred $65,929.44 of attorneys fees in connection with this suit. (Mot. at 5.) Mr. Ragusa concedes that the promissory notes he executed provide for the payment of attorney fees and costs. (Ragusa Mot. Resp. at 2.) He further takes no issue with "the hours claimed by counsel for [Peoples Bank]," as he "acknowledges that this matter required substantially more time that [sic] ordinarily would be required." (*Id.*; *see also* 11/27/17 Vaughn Decl. (Dkt. # 114) ¶ 5 (stating that he "do[es] not dispute the amount of time that this matter has

---

[5] Peoples Bank takes issue with the fact that SMM filed a notice of dismissal rather than obtaining an order of dismissal. (Mot. at 5.) But there is no requirement that SMM obtain a court order for its dismissal. *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

ORDER - 8

required of all counsel").) Nonetheless, Mr. Ragusa requests that the court "take into consideration that the . . . attorney fees claimed by [Peoples Bank] far exceed the original claim by [Peoples Bank] of [the] amount owed by [Mr.] Ragusa." (*Id.*)

The court finds no reason to doubt the reasonableness of the fees claimed by Peoples Bank and its counsel. Given the complexity of the case and the number of filings involved, the court believes that $65,929.44 is a reasonable and equitable award of attorney fees and costs in this matter. Even if Mr. Ragusa is correct that the fees have grown, he provides no indication that the increase is unreasonable or illegitimate in any way. Accordingly, the court approves of $65,929.44 in attorneys fees and costs incurred by Peoples Bank.

**B. Motion for Deficiency Judgment**

The Ship Mortgage Act, 46 U.S.C. § 31325, allows for a mortgagee upon default to pursue an action for deficiency judgment to recover what remains of the outstanding indebtedness. 46 U.S.C. § 31325(b). By way of an *in personam* proceeding, "the mortgagee is entitled to a deficiency judgment if the foreclosure sale does not satisfy its lien and costs." *Wilmington Tr. Co. v. M/V Miss B. Haven V*, 760 F. Supp. 2d 364, 366 (S.D.N.Y. 2010). The deficiency amount "can only be calculated by establishing the difference between the total outstanding obligation and the fair value of the vessel involved." *Bollinger & Boyd Barge Serv., Inc. v. Captain Claude Bass*, 576 F.2d 595, 598 (5th Cir. 1978). In other words, the fair value of the vessel operates as an offset, and the debtor is only responsible for what the vessel does not cover.

//

Peoples Bank requests that the court enter judgment against Mr. Ragusa for the deficiency remaining after the sale of the vessel in the amount of $226,269.86 plus interest at the default rate of $45.98 per day. (MDJ at 1-2.) Mr. Ragusa disputes (1) what the total outstanding obligation is, and (2) how much offset he should receive for the fair value of the vessel. (Ragusa MDJ Resp. at 2; 12/18/17 Vaughn Decl. (Dkt. # 129) ¶¶ 3-14.) The court resolves each issue before calculating the deficiency amount.

1. Total Outstanding Obligation

Peoples Bank claims that as of November 27, 2017, the 601 and 602 Loans owed by Mr. Ragusa total $161,689.64. (11/28/17 Loosmore Decl. ¶ 6; 11/28/17 Olson Decl. ¶ 4.) Mr. Ragusa concedes that he has defaulted on these two loans and does not challenge the figures provided by Peoples Bank. (*See generally* Ragusa MDJ Resp.; 12/18/17 Vaughn Decl. ¶ 2.) However, in passing, Mr. Ragusa points out that the court has not decided whether the 602 Loan was secured by the vessel. (12/18/17 Vaughn Decl. ¶ 3; *see* 8/9/17 Order at 5.) Thus, Mr. Ragusa seems to contest whether the 602 Loan amount should be included in the total outstanding obligation amount.

Mr. Ragusa is correct that the court's foreclosure order on August 9, 2017, did not determine whether the vessel secures the 602 Loan. (*See* 8/9/17 Order at 5.) Nevertheless, the 602 Loan amount ought to be factored into the total amount outstanding for two reasons. First, the preferred ship mortgage that Peoples Bank held for the vessel states that "this Mortgage shall secure the payment of all other sums with interest thereon which may hereafter be borrowed or received by [Mr. Ragusa] from [Peoples Bank]." (7/21/17 Vaughn Decl. (Dkt. # 101) ¶ 4, Ex. C at 3.) Because the 602 Loan was a sum of

money borrowed by Mr. Ragusa after the execution of this mortgage, the plain terms of the mortgage dictate that the 602 Loan is secured by the vessel.

Second, even if the 602 Loan were unsecured, the court observes that it ought to be included in the total outstanding amount as a matter of judicial efficiency. At this stage of the proceedings, because Peoples Bank holds the only remaining claims, there are no questions of priority that may affect payout. (*See* Not. of Acceptance; *see generally* Dkt.) Moreover, Mr. Ragusa concedes that he defaulted on the 602 Loan and thus, there is no question that he owes the outstanding amount claimed by Peoples Bank. (12/18/17 Vaughn Decl. ¶ 2.) And lastly, the proceeds from the sale of the vessel is insufficient to cover what is owed on the 601 Loan.[6] Therefore, regardless of whether the 602 Loan is secured by the vessel, *in personam* defendant Mr. Ragusa is accountable for both the deficiency owed on the 601 Loan and the entirety of the 602 Loan. Factoring in the 602 Loan amount now saves the parties and the court the unnecessary additional step of Peoples Bank filing separately for default judgment on the 602 Loan.

Accordingly, the court concludes that the total outstanding obligation is the sum owed on the 601 and 602 Loans: $161,689.64.

2. Offset

The parties' main dispute centers on how much credit Mr. Ragusa should receive from the sale of the vessel. Generally, "the amount realized on sale is an automatic determination of the amount to be applied upon the debt." *Walter E. Heller*, 595 F.2d at

---

[6] The proceeds are insufficient regardless of whether the court looks to the public auction or the subsequent private sale as determinative of the fair value of the vessel.

971; *see also United States v. F/V Fortune*, 1987 A.M.C. 2351, 2356 (D. Alaska 1987) ("The most valid measure of the fair market value of a vessel is the market value of the vessel obtained at a fairly conducted sale.") But here, there were two sales and consequently two vastly different sale prices that could serve as the offset. Peoples Bank argues that because it "was able to realize only $34,100.00" from the subsequent private sale, that amount operates as the fair value of the vessel and consequently, the offset figure. (MDJ Reply at 3.) Mr. Ragusa maintains that the sale price of $149,753.12 at the court-ordered U.S. Marshal's auction should serve as the offset value. (Ragusa MDJ Resp. at 2.)

The court recognizes that there is a dearth of case law with these exact circumstances: where the mortgagor purchases the vessel at the judicial auction for one price and argues that another price from its subsequent private sale should control. And while Peoples Bank maintains that "the law is well established . . . that the resale price less the cost of repairs is presumptively the fair market value of property"[7] (Mot. Reply at 3-4), it does not proffer any precedent in which the court utilized a subsequent private sale price in lieu of the judicial sale price (*see generally* MDJ; MDJ Reply). Indeed, no party presents a case that directly addresses whether the "amount realized on sale" refers

---

[7] Peoples Bank again relies heavily on a parenthetical in the court's previous order that utilizes this "resale" language. (*See* MDJ Reply at 3.) This reliance is misplaced. First, the parenthetical is dicta, as it was not essential to the court's holding in that order foreclosing the mortgage on the vessel. Second, as discussed above, it is not clear that "resale" refers to the subsequent private sale. Indeed, *Walter E. Heller*, the case the court was describing in the parenthetical, does not hold that the sale price of a subsequent sale trumps the judicial sale price. *See* 595 F.2d at 972.

to the court-ordered public auction or a subsequent sale by the mortgager. (*See generally* MDJ Reply; Ragusa MDJ Resp.; SMM MDJ Resp.)

Contrary to Peoples Bank's assertion, the judicial sale price usually serves as a proxy for the fair market value of a vessel. *See Walter E. Heller*, 595 F.2d at 971; *First Citizens Bank & Tr. Co. v. Oil Screw Little Lady*, 963 F. Supp. 506, 508 (E.D.N.C. 1997) (accepting sale price at interlocutory sale to calculate the deficiency judgment). However, courts have taken pause when the vessel-at-issue is bought by the mortgagor and then sold for a different price. *See Walter E. Heller*, 595 F.2d at 972 (recognizing a "need for scrutiny" when the mortgagor and not a third party purchases the vessel at the interlocutory sale); *see also Citytrust v. Yacht Restoration*, No. 90 Civ. 7814(JSM), 1991 WL 90752, at *2 (S.D.N.Y. May 17, 1991). For instance, in *Walter E. Heller*, the plaintiff purchased the vessel at the interlocutory judicial sale for $35,000.00 but allegedly sold it afterwards for $52,000.00. 595 F.2d at 971. The Fifth Circuit determined that, given the "substantial disparity" between the two prices, the district court should have allowed the defendants to pursue an offset measured by the fair value of the vessel as opposed to the judicial sale price. *Id.* However, the Fifth Circuit cautioned that "[i]f on remand the defendants fail to carry their burden of proving a fair value in excess of the sale price the district court should adopt the $35,000 sale price as the measure of the defendants' offset." *Id.* n.3.

The court adopts the *Walter E. Heller* approach here, as the present case presents an analogous situation, albeit the parties' positions are switched. After obtaining ownership at the auction, Peoples Bank sold the vessel for $34,100.00—a price

ORDER - 13

drastically lower than its $149,753.12 bid at the judicial auction. (*See* MDJ Reply (Dkt. # 134) at 2-3.) Because of the "substantial disparity" between these two prices, the court scrutinizes whether the judicial sale price adequately captures the offset value, or whether, as Peoples Bank maintains, the fair market value is closer to what it received in the subsequent private sale. *See Walter E. Heller*, 595 F.2d at 972.

After applying the necessary scrutiny to the record, the court concludes that Peoples Bank has failed to establish that the fair value of the vessel is less than the judicial sale price. Despite having notice that the fair value of the vessel would be a central issue (*see* SMM Mot. Resp. at 12 (questioning Peoples Bank's rejection of the judicial sale price)) and multiple opportunities to provide such evidence, Peoples Bank offers little to no support of the vessel's fair value aside from declaration testimony that it received $34,100.00 from the private sale.[8] (*See generally* 11/28/17 Olson Decl.; 11/28/17 Loosmore Decl.; 12/22/17 Olson Decl. (Dkt. # 135).) Instead, as Peoples Bank recognizes, the record contains appraisals submitted by Mr. Ragusa that suggest the fair value of the vessel exceeds even the price paid at the judicial auction. (*See* MDJ Reply at 3 ("Unfortunately, the file in this case is full of estimates of the value of the defendant

//

---

[8] Peoples Bank emphasizes that its purchase at the auction was through a credit bid. (MDJ Reply at 3; *see also* Mot. Reply at 4 ("The amount that plaintiff bid as a credit bid at the interlocutory sale of the defendant vessel has no relevance to the value of the vessel.").) But Peoples Bank offers no authority to support its contention that the nature of the bid carries any significance. (*See generally* MDJ Reply; Mot. Reply.) To the contrary, a survey of the case law indicates that the type of bid at a judicial auction is irrelevant. *Cf. Branch Banking and Tr. Co. v. Frank*, No. 2:11-CV-1366 JCM(CWH), 2013 WL 5428112, at *5 (D. Nevada Sept. 26, 2013) ("[T]he credit bid is sufficient to establish prima facie proof of fair market value . . . .").

vessel, ranging upwards of $200,000.00 and more."); *see also* Ragusa Decl. ¶¶ 5, 9, Ex. 1 (attesting to several surveys that value the vessel at above $200,000.00).)

Rather than offering sufficient appraisal evidence, Peoples Bank relies heavily on the fact that it "was able to realize only $34,100.00 from the sale of the vessel." (MDJ Reply at 3.) But what Peoples Bank actually received for the vessel is plainly insufficient to establish the fair market value, as evidenced by *Walter E. Heller*. In that case, it is incontrovertible that the plaintiff actually received $52,000.00 from its subsequent sale. *Walter E. Heller*, 595 F.2d at 972. Nevertheless, the Fifth Circuit required more. *Id.* Without more evidence of the fair market value of the vessel, the Fifth Circuit instructed the district court to adopt the judicial sale price. *Id.* n.3. The court concludes the same here. The fact that Peoples Bank realized only $34,100.00 from a subsequent sale is insufficient to establish that the fair market value of the vessel is different from what the vessel sold for at the judicial auction.[9]

Accordingly, because Peoples Bank does not meet its burden of showing that the fair market value of the vessel is something other than the judicial sale price, the court adopts the judicial sale price of $149,753.12 as the offset to be applied.[10]

---

[9] Although not dispositive to its ruling, the court takes note that the public auction was allegedly well-attended with interested bidders aside from Peoples Bank. (*See* SSM Mot. Resp. at 5.) Thus, it is entirely possible that if Peoples Bank had not bid, a third-party would have purchased the vessel for a price higher than $34,100.00. Instead, Peoples Bank exercised its full $149,753.12 credit in the opening bid, presumably because it believed it could then sell the vessel at a profit. (*See id.*) Unfortunately, Peoples Bank's gamble did not pay off, and there is no reason that Mr. Ragusa ought to pay—quite literally—for the risk that Peoples Bank undertook.

[10] Because the court concludes that the judicial sale price is the offset value, it does not reach the issue of whether Peoples Bank's subsequent private sale is required to comply with 28 U.S.C. §§ 2001 and 2004. (*See* Ragusa MDJ Resp. at 2; 12/18/17 Vaughn Decl. ¶¶ 9-12.)

ORDER - 15

### 3. Deficiency Amount

Having determined the relevant values, the court now calculates the deficiency amount. A lienholder's claim is satisfied out of the proceeds of the sale after the costs of custody are accounted for. *Kopac Int'l Inc. v. M/V Bold Venture*, 638 F. Supp. 87, 88, 93 (W.D. Wash. 1986). Here, the value of the vessel is $149,753.12, *see supra* § III.B.2; after satisfying the $65,501.56 costs of custody, *see supra* § III.A.1.a, $84,251.56 remains to offset Mr. Ragusa's total outstanding obligation of $161,689.64, *see supra* § III.B.1. Thus, the deficiency that remains is $77,438.08. As discussed above, Mr. Ragusa is additionally responsible for $65,929.44 in legal fees, *see supra* § III.A.2, and thus the total deficiency against *in personam* defendant Mr. Ragusa is $143,367.52. Peoples Bank submits that the interest on the judgment is the default rate of $45.98 per day from November 27, 2017, through the entry of judgment and until paid. (MDJ at 2.) Mr. Ragusa does not contend otherwise.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Peoples Bank's motion for fees (Dkt. # 109). The court ORDERS that Peoples Bank is entitled to judgment against Mr. Ragusa, *in personam*, for $143,367.52, plus interest at $45.98 per day from November 27, 2017, through the date of entry of this judgment and until paid. The Clerk is DIRECTED to close this matter.

Dated this 22 day of January, 2018.

JAMES L. ROBART
United States District Judge